**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GARY L. BLAKE, JR., ) | CASE NO. 4:08-cv-01176 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE ECONOMUS |
| v ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | MAGISTRATE JUDGE VECCHIARELLI |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | **REPORT & RECOMMENDATION** |

Plaintiff, Gary L. Blake, Jr. ("Blake"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Blake's application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 416 (i). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge for a report and recommendation pursuant to a referral under Local Rule 72.2(b).

For the reasons set forth below, the final decision of the Commissioner should be AFFIRMED.

**I. Procedural History**

Blake filed his application for DIB on February 22, 2006 alleging disability as of August 14, 2005. His application was denied initially and upon reconsideration. Blake timely requested an administrative hearing.

Administrative Law Judge Elliott Bunce ("ALJ") held a hearing on November 21, 2007, at which Blake, who was represented by counsel, Kathleen Blake (Blake's wife), and Samuel Edelmann, vocational expert ("VE") testified. The ALJ issued a decision on December 20, 2007 in which he determined that Blake was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Blake filed an appeal to this Court.

On appeal, Blake claims the ALJ erred: (1) by failing to address plaintiff's failed cervical surgery syndrome and the residuals thereof including pain; (2) by not finding that plaintiff's condition meets and/or equals Listing § 1.04A; (3) by stating that there is no medical basis for the plaintiff's need to hold one arm with the other, and by not including cervical or other postural limitations into the RFC; (4) by failing to adequately address why he was not relying on the statements of occupational medicine physician, John L. Dunne, D.O.; (5) by stating there is no evidence of motor loss; and (6) by not believing plaintiff's condition requires him to spend four and one half hours of an eight hour day in a reclined position. Blake also claims he is totally disabled and should have been awarded benefits.

The Commissioner disputes Blake's claims.[1]

## II. Evidence

### A. *Personal and Vocational Evidence*

Blake was born on November 26, 1967, and was 39 years old at the time of his hearing (Tr. 307) Blake graduated from high school. (Tr. 309) Blake has past relevant

---

[1]The ALJ found that Blake has the severe impairments of cervical disc disease status post disectomy and fusion procedure, and asthma. Transcript p. 20 ("Tr." 20) Blake's appeal does not challenge any finding with respect to his asthma, therefore his asthma is not addressed herein.

2

work as a hardware store sales clerk and a fork-lift operator. (Tr. 25)

*B. Medical Evidence*

Blake presented to Dr. Albert W. Buch for shoulder pain, neck pain, and tightness on May 18, 2005. (Tr. 120) On May 27, 2005 Blake presented to Dr. Mirjana Spahija, a physiatrist to whom he was referred by Dr. Buch. Dr. Spahija ordered an MRI and sent Blake to physical therapy. (Tr. 215-216) A May 31, 2005 MRI indicated: Mild disc desiccation throughout the cervical spine without significant loss of disc height; C3-C4 level mild diffuse disc bulging resulting in mild spinal canal stenosis with moderate right and mild left-sided foraminal stenosis; C4-C5 mild disc bulging resulting in mild spinal canal stenosis with mild right-sided foraminal stenosis; C5-C6 diffuse disc bulging with a left paramedian disc protrusion resulting in ventral flattening of the left aspect of the spinal cord and moderate canal stenosis to the left of midline; significant left-sided foraminal stenosis at this level. (Tr. 113-114)

On June 8, 2005, Blake presented to Mark Navyac, P.T. for a physical therapy evaluation. (Tr. 195-196) Blake attended physical therapy several times between June 8, 2005 and September 6, 2005. (Tr. 173-187) On September 7, 2005, Blake cancelled his September 7, and September 8, 2005 appointments due to severe left shoulder pain. (Tr. 172) On October 27, 2005, Blake was discharged from therapy due to noncompliance after several attempts had been made to contact him. (Tr. 171)

On September 20, 2005, Blake presented to Dr. Ashvin T. Ragoowansi for evaluation of his cervical radiculopathy. Dr. Ragoowansi ordered a myelogram and postmyelo-CT scan to determine whether Blake was a surgical candidate. (Tr. 228-229) On October 4, 2005, Dr. Ragoowansi reported that Blake's studies indicate that he has a significant disc

3

herniation at C5-C6 on the left, he has some compression proximally of the cord and existing nerve root, and he continues to have symptoms of left arm pain.  Dr. Ragoowansi recommended anterior cervical disectomy and fusion with instumentation.  (Tr. 148)

On November 7, 2005, Blake had the recommended surgery.  (Tr. 139-140)  Post-operative X-rays taken on November 14, 2005 showed the cervical fusion in good position and no other abnormalities are noted.  (Tr. 131)  On November 15, 2005, Dr. Ragoowansi reported that Blake was doing quite nicely with complete relief of his preoperative arm pain.  (Tr. 226)  A December 20, 2005 X-ray indicates satisfactory post operative appearance.  (Tr. 130) On the same date, Dr. Ragoowansi reported that at six weeks post surgery Blake was doing well in terms of arm pain, paraesthesias, and pressure sensation in his arm.  He still had some neck pain that Dr. Ragoowansi opined was musculoskeletal in nature.  Dr. Ragoowansi recommended that Blake begin a back-to-work rehabilitation program.  (Tr. 225)

On January 13, 2006, Blake saw Dr. Spahija and reported that the constant pressure he had over his left shoulder was gone, but he still had occasional pressure.  He also had some neck aches with movement, and some sharp neck pain that shot down his spine.  He reported no arm pain, numbness, or tingling.  Blake had normal strength in bilateral upper extremities, his reflexes were symmetrical, and his sensation was intact.  Dr. Spahija referred Blake to physical therapy.  (Tr. 208)

On January 17, 2006 Stephanie Bonidie, D.P.T. conducted a physical therapy evaluation on Blake which indicated a decrease in cervical range of motion.  Bonidie opined that Blake would benefit from physical therapy to decrease pain, increase range of motion, and maintain the strength of the upper extremities.  (Tr. 223-224)

A February 9, 2006 MRI revealed no substantial instability, but showed restricted range of motion. (Tr. 129) A February 17, 2006 MRI showed no recurrent disc herniation or spinal stenosis, but did show small central disc protrusions that placed minimal pressure on the thecal sac. (Tr. 222) On February 21, 2006, Dr. Ragoowansi noted that Blake's symptoms were intermittent and definitely much better than before surgery. Dr. Ragoowansi opined that it was a matter of time for him to heal, and released him to Dr. Spahija as no further neurosurgical intervention was needed. (Tr. 221)

Blake attended physical therapy from January 2006 until April 20, 2006. (Tr. 161-170, 268-269) He also saw Dr. Spahija on March 10, 2006, March 24, 2006, and April 7, 2006. On each of these visits, Dr. Spahija noted that Blake had normal strength in bilateral upper extremities, symmetrical reflexes, and intact sensation. (Tr. 204-206)

On May 3, 2006, Bonidie performed a functional capacity evaluation of Blake at the request of Dr. Spahija. (Tr. 243) Bonidie reported the following:

1. His pain ratings were typically high, suggesting an alteration in function. Blake's perception of his level of disability may be close to his actual level of disability;

2. The results of the dexterity testing suggest that Blake is able to perform work with the requirements for reaching, handling, fingering and/or feeling at work with little difficulty;

3. Musculoskeletal examination revealed limitations in cervical range of motion, however, his strength was normal;

4. Demonstrated lifting, carrying, pushing, and pulling suggest that Blake is capable of work in the light and some medium category. This means Blake can lift up to 10-20 pounds over the course of an eight hour day. During the lifting testing, however, Blake demonstrated poor body mechanics and control of the load. This suggests that he could not lift safely and dependably throughout the workday. His reports of pain were 9/10 at times. He is not safe pushing or pulling;

5. He would not be safe with the fork-lift over the course of an eight hour workday;

6. Blake demonstrates tolerance to activities in sustained sitting and/or standing;

>    7. Blake demonstrates the ability to perform very little of his job duties/physical demands as a fork-lift operator.

(Tr. 252)

On May 19, 2006, Blake saw Dr. Spahija for a follow-up appointment. Blake reported that he continued to have left neck pain and squeezing sensation on the left shoulder. Dr. Spahija noted Blake had normal strength in bilateral upper extremities, his reflexes were symmetrical, and his sensation was intact. He referred Blake to Dr. Dunne, occupational specialist, and Dr. Donatelli, pain specialist. He also referred Blake to vocational rehabilitation. (Tr. 271)

On May 26, 2006, Rebecca Neiger performed a physical residual functional capacity assessment wherein she found Blake could sit for about six hours of an eight hour workday; and stand and/or walk for six hours of an eight hour workday. (Tr. 254)

Dr. Donatelli saw Blake on June 20, 2006, and noted that Blake had restricted cervical range of motion and normal motor, sensory, and reflex function in his arms except for reduced bicep and tricep reflexes in his left arm. Dr. Donatelli reviewed Blake's February 17, 2006 MRI which showed a small central disc protrusion at C3-C4 and C4-C5 causing mild thecal sac compression. Dr. Donatelli opined that the majority of Blake's symptoms were not nerve related. He diagnosed Blake with failed cervical surgery syndrome and recommended a series of left cervical facet blocks. (Tr. 273-275)

On July 11, 2006, Dr. Dunne saw Blake. Dr Dunne noted that Blake had reduced cervical range of motion, pain with certain movements, and pain upon compression. His left bicep reflex was subtly diminished and his left pinch and grip strength were less than Dr. Dunne expected; however, Dr. Dunne noted that this may be because his left hand is

his non-dominant hand. Dr. Dunne diagnosed Blake as post surgical fusion with chronic pain. He opined that Blake could not return to work due to his poorly controlled pain. Dr. Dunne explained that the typical lost time post cervical fusion is 12 to 24 months, typically at least 18 months. Dr. Dunne agreed with Dr. Donatelli's recommendation regarding injections to control the pain. Dr. Dunne recommended that Blake follow up with Dr. Donatelli, and if the pain levels decrease, Blake should return to Dr. Dunne for evaluation. (Tr. 261)

On September 7, 2006, Blake had an MRI, CT scan, and X-ray. There was no residual or recurrent disc herniation noted. (Tr. 277) Dr. Cossrow reviewed the CT scan and opined that fusion had not taken place because he could still identify disc space. (Tr. 276)

On September 15, 2006, Blake presented to Dr. Spahija. Dr. Spahija reviewed the September 7, 2006 MRI and found the results unremarkable. He noted Blake had normal strength, reflexes, and sensation. There were no signs of neurological deficits or radiculopathy. Blake did not have any tenderness over his cervical paraspinal muscles nor over the trapezius muscles. (Tr. 279)

On October 17, 2006, Blake returned to Dr. Dunne for an update pursuant to his attorney's suggestion. (Tr. 282) Dr. Dunne reported that there had been no change since Blake's last appointment. Dr. Dunne noted that Blake moved guarding, holding his neck at a funny angle. He noted that Blake tends to hold his left arm across his abdomen, supporting it with his right arm. Blake told Dr. Dunne that he does this to raise his shoulder and relieve pressure off the top of his shoulder, trapezius, and the left side of his neck. Dr. Dunne noted that Blake's range of motion was very restricted. He further noted that

7

Blake's cranial nerves were in tact; neurologically he was intact; peripheral examination for reflexes, sensory and motor strength was 5/5; glenohumeral motion was good; and there were no other abnormalities on physical examination. Blake's subjective pain scale was four to six with an occasional eight. He was still not able to return to work and remained disabled. Dr. Dunne advised Blake that there was nothing more he could do for him and recommended that he consider obtaining a second opinion. (Tr. 282)

On November 21, 2006, Blake saw Dr. Ragoowansi. Blake indicated that he was concerned because prior imaging studies had indicated incomplete fusion. Dr. Ragoowansi opined that the X-rays revealed that fusion had taken place. He advised Blake that he did not recommend any further surgical interventions. (Tr. 280)

*C. Hearing testimony*

At the hearing, Blake testified as follows. He has a high school education. (Tr. 309) He drives short distances to take his children to and from school. (Tr. 309) His routine is to get up and take the kids to school, lay back down, watch television, and then get up to get the kids from school. (Tr. 312) He sometimes visits his mother, or oldest son who lives nearby. (Tr. 312) He does not perform household chores such as cleaning, laundry, or shopping. (Tr. 311-312)

Blake testified that the November 2005 surgery did not help. (Tr. 312) He has pain in his lower shoulder and neck that radiates into his head. He gets extreme headaches about four times a week that affect his ability to concentrate. (Tr. 312, 321) He takes ibuprofen for the pain which provides partial relief. (Tr. 313-314) Blake testified that he could not lift and carry things over an eight hour workday. He has problems walking because he gets out of breath due to his asthma, and he has balance problems due to the

angle at which he holds his neck due to pain. (Tr. 317-318) He is not comfortable at all with walking. (Tr. 318) He is not comfortable standing because the weight pushes down on his neck and his arm dangles. He uses his right arm to hold his left arm to keep the pressure off his shoulder. (Tr. 318) He is also uncomfortable sitting. He can sit for about a half an hour before he has to stand up. (Tr. 318-319) He spends most of his time reclining, and naps about four and one half hours between 8:00 a.m. and 5:00 p.m. (Tr. 319, 323) He feels his condition has gotten worse since his surgery. (Tr. 323) He gets tingling in the back of his left arm and he has lost strength in his hands. (Tr. 324-325) Pushing and pulling affect his neck, and the more activity he does, the more his neck hurts. (Tr. 325)

Mrs. Blake testified that she and her husband had been told by Dr. Don [sic Dunne] that about five percent of the surgeries do not work. (Tr. 327-328) She testified that Blake cannot be involved with his children like he used to, he no longer rides a motorcycle or dirt bike, and he cannot even cut the grass. (Tr. 328)

The VE testified that Blake's past work as a hardware store sales clerk was a semi-skilled heavy job; and his work as a fork-lift operator was semi-skilled ranging from light to medium. (Tr. 330)

The ALJ asked the VE to consider an individual with Blake's education and work history, who is able to perform work at the light exertional level, that requires no climbing, crawling, or crouching, and no more than occasional balancing, stooping, and kneeling or more than occasional pushing and pulling. He then asked the VE whether such a person would be able to do the heavy work or light to medium work that Blake had done in the past. The VE testified that he could not. (Tr. 330) The ALJ then asked whether there

9

would be any unskilled entry-level work that such a person could perform. The VE stated that such a person could work as a cashier, 3.3 million jobs nationally; a fast food worker 2,000,000 jobs nationally; or an inspector, packer, 500,000 jobs nationally. (Tr. 330) The VE testified that a fast food worker would be exposed to poor ventilation or extremes of dust, humidity, and temperature. (Tr. 331)

The ALJ then asked the VE to exclude the environmental limitation, and consider an individual with the same limits as set forth above, but at the sedentary level. The VE testified that such an individual could work as a telephone solicitor, 404,000 jobs nationally; telephone clerk, 104,000 jobs nationally; or ticket sales, 238,000 jobs nationally. (Tr. 331) The VE testified that each of these jobs allows a worker to alternate sitting and standing, and none exposes the worker to poor ventilation or extremes of dust, humidity, or temperature. (Tr. 331) The VE also testified that no jobs exist for an individual that has to spend four hours out of an eight hour day in some type of a reclined position. (Tr. 331, 340)

### III. Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

> [T]he claimant has the residual functional capacity to perform work that does not require: exertion above the light level; or any climbing, crouching, or crawling; or more than occasional balancing, stooping, kneeling, pushing or pulling; or exposure to poor ventilation or extremes of dust, humidity, or temperature.

(Tr.21)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct

11

legal standards were applied. See *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

### A. The ALJ Did Not Err By Failing To Find That Blake's Failed Cervical Surgery Syndrome And Severe Pain Constituted a Severe Impairment

Blake alleges that the ALJ erred by failing to find that his failed cervical surgery syndrome and severe pain constitute a severe impairment at step two of the disability evaluation.[2] The Social Security Administration has established a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a) At step two of the evaluation, the ALJ must determine whether the individual has a severe impairment. 20 C.F.R. § 404.1520(c) If the ALJ finds that the individual suffers from at least one severe impairment, he is required to proceed with the sequential evaluation. Therefore, once the ALJ finds that the claimant suffers from at least one severe impairment, he need not articulate any other severe impairment from which the individual

---

[2] Although Blake claims the ALJ erred in this respect, he fails to articulate how this error affected the outcome of his claim.

may suffer. *See Maziarz v. Secretary of Health and Human Servs*, 837 F.2d 240, 244 (6th Cir. 1987) (Secretary's failure to find claimant's cervical condition constituted a severe impairment could not be reversible error where Secretary found claimant had severe impairment of coronary artery disease, and continued with the remaining steps of the disability determination.)

In this case the ALJ found that Blake had two severe impairments; cervical disc disease status post discectomy and fusion procedure, and asthma. (Tr. 20) Having so found, the ALJ continued with the disability determination, taking into consideration all of Blake's symptoms. (Tr. 21) Therefore, the ALJ's failure to include failed cervical surgery syndrome as a severe impairment at step two is not reversible error.[3]

**B.    Blake Has Failed to Establish that His Impairments Meet or Equal the Criteria of Listing §1.04A**

Blake argues that his impairments meet or medically equal the requirements of Listing § 1.04A *Disorders of the Spine* 20 C.F.R. Pt. 404, subpt P, app.1 which requires, among other things, that the claimant have motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.[4]  Blake bears the burden of

---

[3] Moreover, despite Blake's argument, the ALJ did considered Blake's residual pain in his analysis.  *See infra* § VI (D) p.16.

[4] Listing 1.04 provides in part: Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

13

establishing that his impairments meet or medically equal this Listing which is one of the medical conditions deemed to be presumptively disabling. *See Sullivan v. Zebley* 493 U.S. 521, 525 (1990)*, Elam ex rel Golay v. Comm'r Soc. Sec.*, 348 F. 3d 124, (6th Cir. 2003)

The ALJ found that Blake's impairments failed to meet the criteria of the listing because there is no evidence of motor loss accompanied by sensory or reflex loss. (Tr. 20) This finding is supported by substantial evidence in the record. *See* medical records at Tr. 195, 204-206, 208, 210-212, 215, 223, 252, 270-271, 279, 283, all of which indicate that Blake had normal strength and/or normal sensory and reflex function.

In support of his argument, Blake cites to Dr. Spahija's September 20, 2005 finding of wrist extensor weakness (Tr. 157); Dr. Dunne's July 11, 2006 finding that Blake's left hand strength is less than expected ( Tr. 261); and the May 3, 2006 dynamometer grip test results. (Tr. 248)  This  evidence is not sufficient to undermine the ALJ's finding.  Dr. Spahija's September 20, 2005 finding of wrist extensor weakness was prior to Blake's surgery. (Tr. 157) Dr. Dunne's July 11, 2006 finding that Blake's left hand strength is less than expected is tempered by Dr. Dunne's speculation that the weakness may be due to Blake being right handed. (Tr. 261) The May 3, 2006 dynamometer grip test does indicate some decreased strength, however this is the only finding of decreased strength in the record, and it is insufficient to overcome the substantial evidence of normal strength as set forth in the medical records cited above.

Because Blake has failed to establish motor loss, it is not necessary to address the issue of sensory or reflex loss.  However, the same evidence that supports the ALJ's finding regarding motor loss, also supports his findings regarding sensory or reflex  loss.

In his reply brief, Blake appears to argue, for the first time, that the ALJ was required

to obtain an updated medical opinion from a medical expert upon a finding of nonequivalence. Blake is incorrect. Social Security Ruling 96-6p, 1996 WL 374180 provides in pertinent part that an updated medical opinion is required only when, "in the opinion of the [ALJ]...the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalency may be reasonable." Social Security Ruling 96-6p, 1996 WL 374180, pp.3-4  There is no evidence to suggest that a judgment of equivalency may be reasonable in this case. Therefore, the ALJ did not err by failing to obtain an updated medical opinion.

Finally, Blake argues in his reply brief that the ALJ must consider the combination of Blake's impairments to determine medical equivalency. Contrary to Blake's assertion, the ALJ did consider the combination of Blake's impairments. *See* Tr. 20-21 wherein the ALJ specifically states that he has assessed claimants cervical condition and asthma.

## C.   The ALJ Properly Assessed Dr. Dunne's Statements

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983). Medical opinions are statements about the nature and severity of a patient's impairments including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). Dr. Dunne's opinion that the average loss time from work is 12-24 months after cervical surgery is not a medical opinion within the meaning of 20 C.F.R. § 404.1527(a)(2), and therefore it is not entitled to any deference. Additionally, the issue of whether Blake is disabled is reserved to the Commissioner, not a physician. *See*

15

*Warner v Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (The determination of disability is the prerogative of the Commissioner, not the treating physician.)  Therefore, the ALJ properly analyzed Dr. Dunne's opinion in accordance with Social Security Ruling 96-2p, 1996 WL 374188.

### D.   *Substantial Evidence Supports the ALJ's Findings*

The ALJ found that Dr. Dunne's physical examination did not provide any organic reason for Blake holding his left arm with his right arm.  Specifically, the ALJ noted that upon examination Blake's cranial nerves remained intact; his neurological examination was intact; and his reflexes, sensation, and motor strength were described as 5/5.  Dr. Dunne further stated that there were no abnormalities on examination, other than limited range of motion of the cervical spine, which the ALJ accommodated in his RFC. (Tr. 24)

The evidence cited by Blake does not refute the ALJ's finding.  Dr. Dunne's observation of Blake's posture, Blake's subjective explanation for his posture, and Dr. Dunne's comment that he would like to see Blake return to therapy with an emphasis on cervicothoracic stabilization do not establish that Blake's postural limitations are medically necessary.

Additionally, the ALJ properly assessed Blake's pain symptoms.  Social Security Ruling 96-7p, 1996 WL 362209 sets forth a two-step process for evaluating pain symptoms.  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain.  Second, once an underlying impairment is found, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work

activities. Whenever the individual's statements about the intensity, persistence or functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. Social Security Ruling 96-7p, 1996 WL 362209 *See also, Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) wherein the Court reviewed the pertinent regulations at 20 C.F.R. § 404.1529 and summarized the applicable test as follows:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* at 1038-39 (quoting *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The ALJ found that Blake's statement's concerning his symptoms were not entirely credible. (Tr. 21-22) The ALJ's finding is supported by substantial evidence in the record. This evidence includes: (1) Blake's May 3, 2006 functional capacity evaluation which assessed Blake as capable of light to medium work, with a good tolerance for sustained sitting and standing (Tr. 252); (2) Blake's May 26, 2006 residual functional capacity assessment which indicates that Blake is able to stand and/or walk, and sit for six hours of an eight hour work day (Tr. 254); (3) a February 2006 MRI which showed cervical fusion at C5-C6, no recurrence of disc herniation or spinal stenosis, and only small protrusions at C3-C4 and C4-C5 with only minimal impression on the thecal sac (Tr. 128); (4) Dr. Spahija's April 7, 2006 notes which indicate Blake reported a squeezing sensation in his left shoulder, neck ache, and tightness in his trapezius, but denied numbness, tingling, or

17

radiating pain down his arm; Blake reported improvement with the TENS unit, and declined epidural steroid injections (Tr. 204); (5) an April 12, 2006 normal shoulder MRI (Tr. 217); (6) a September 2006 MRI which showed no stenosis, or residual or recurrent herniated disc (Tr. 278); and (7) November 21, 2006 imaging which showed no instability of cervical fusion. (Tr. 281)

Additionally, while the ALJ found that Blake's statement regarding his pain were not entirely credible, he did not completely disregard the effects of Blake's pain. Specifically, the ALJ stated that he was considering Blake's pain in determining that Blake was limited in his ability to lift and carry. (Tr. 25) Accordingly, the ALJ's findings regarding Blake's residual pain are supported by substantial evidence.

Blake also argues that the ALJ erred by failing to believe his condition requires him to spend four and one half hours out of an eight hour day in a reclined position. Not only has Blake failed to present any objective medical evidence to support this claim; but, the objective medical evidence in the record leads to a contrary conclusion. *See* Tr. 195, 204-206, 208, 210-212, 215, 223, 252, 270-271, 279, 283 (medical records indicating Blake had normal strength and/or normal sensory and reflex function); Tr. 252 (Bonidie residual functional capacity evaluation indicating Blake has tolerance for activities requiring sustained standing and/or sitting); Tr. 254 (Neiger residual functional capacity assessment indicating Blake could stand and/or walk, and sit for six hours out of an eight hour workday)

Therefore, substantial evidence supports the ALJ's finding.

### VII.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED.


s/ Nancy A. Vecchiarelli
United States Magistrate Judge


Date: February 13, 2009


**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985)*, reh'g denied*, 474 U.S. 1111 (1986).**